IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| J. GREGORY CARWIE,<br>   as the conservator of the<br>   estate of Christopher Forwood,<br><br>      Plaintiff<br><br>v.<br><br>MOBILE COUNTY, ALABAMA,<br>SAM COCHRAN, and<br>NOAH PRICE "TREY" OLIVER,<br><br>      Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO.<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### Introduction

1. This is an action alleging violations by defendants of the constitutional rights of Christopher Forwood. Forwood, a non-violent offender, was housed with a violent murderer. The murderer brutally assaulted Christopher, rendering Christopher incapacitated.

### Jurisdiction and Venue

2. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

3. This Court has jurisdiction of plaintiff's claims pursuant to 28 U.S.C. § 1331.

4. Venue is proper under 28 U.S.C. § 1391(b), as the events and omissions giving rise to plaintiff's claims occurred within this judicial district.

## Parties

5. Plaintiff J. Gregory Carwie is the duly-appointed conservator of the estate of Christopher Forwood.

6. Defendant Mobile County, Alabama is an Alabama county. It is responsible for funding the Mobile County Metro Jail (MCMJ).

7. Defendant Sam Cochran was the Mobile County Sheriff at all relevant times. As the sheriff, among other things, he was responsible for management of MCMJ. Defendant has a statutory duty under Alabama law to attend to the needs of inmates in MCMJ.

8. Defendant Noah Price "Trey" Oliver was MCMJ Warden at all relevant times.

9. Plaintiff sues each of the individual defendants in their individual capacity. Each of the individual defendants acted under color of state law and within the scope of his employment when engaging in the misconduct described herein.

## Facts

10. On July 31, 2021, Christopher Forwood was housed in the Mobile County Metro Jail (MCMJ) in Mobile, Alabama.

11. Forwood was a non-violent offender.

12. Despite being a non-violent offender, Forwood was housed with violent and dangerous inmates, including Marcos Javier Morales Oslan.

13. Oslan was in jail for murder.

14. On or about July 31, 2021, Oslan repeatedly punched, kicked, and struck Forwood until he was unconscious.

15. Christopher suffered traumatic and serious physical injuries and is not currently able to care for himself as a result of the assault.

16. Oslan has since pleaded guilty to attempted murder.

17. That MCMJ correctional staff housed Christopher with Oslan was a gross deviation from correctional standards and indicates a fundamental failure in MCMJ policies and procedures.

18. This gross deviation was known to and participated in by numerous correctional officers.

19. This gross deviation is routine at MCMJ.

20. Defendants have been sued for housing non-violent offenders with murderers in the past. *See Dickinson v. Cochran*, 833 Fed. Appx. 268 (11th Cir. 2020).

21. An Alabama county commission is charged with maintaining jails and each county is required to maintain a jail of sufficient size and strength to secure the

prisoners. Ala. Code (1975) §§ 11-14-10, 11-14-13. A county's duties to "maintain a jail" under Ala. Code (1975) § 11-14-10 requires that it keep the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Keeton v. Fayette County*, 558 So.2d 884, 886 (Ala. 1989). The Alabama Code provides for the counties to remain informed about conditions in the jails. The county commission has the authority to inspect the jail without notice to the sheriff. Ala. Code § 11-14-22 (1989).

22. MCMJ has been under scrutiny by the U.S. Department of Justice for issues at the jail, including inmate-on-inmate violence, since the early 2000s.

23. Cochran and Oliver have acknowledged publicly that MCMJ regularly houses more inmates than it can safely.

24. Cochran and Oliver, acting with deliberate indifference, have failed to adequately implement a proper classification system and take other measures to reduce inmate-on-inmate violence, failures that have been exacerbated by the overcrowding situation.

25. As a 2009 U.S. Department of Justice letter to Cochran and the Mobile County Commission stated, "[a] meaningful classification system is even more important in crowded facilities like MCMJ." (https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/MCMJ_findlet_0

1-15-09.pdf)  The DOJ investigation found in part that:

> Specifically, our review revealed that [the jail] failed to: take adequate measures to limit the introduction of contraband [including "shanks"] into the facilities; classify inmates appropriately based on their anticipated in-custody behavior; and supervise inmates adequately. Such failures significantly increase the risk of violence, placing both inmates and staff at risk of serious harm. The security, supervision, and protection from harm deficiencies at MCMJ were exacerbated by a lack of adequate policies, procedures, training, and staffing.

26.  At that time MCMJ averaged 1,000 to 1,300 inmates monthly.

27.  The 2009 DOJ letter described this population level as rendering MCMJ "dangerously overcrowded."

28.  At the time Christopher was assaulted, in July 2021, MCMJ routinely housed over 1500 inmates.

29.  That MCMJ is "dangerously overcrowded" has been known to the county's policymakers (and to Cochran and Oliver) for many years (well prior to the 2009 DOJ letter).

30.  The county's policymakers and Cochran and Oliver have long recognized that the current MCMJ facilities are inadequate to safely house the inmate population.

31.  Nevertheless, for many years, the county, Cochran, and Oliver have failed and refused to take adequate steps to address the extreme housing crisis at

MCMJ.[1]

32. The 2009 DOJ letter, among other things, put Cochran and Oliver on notice regarding 1) an ongoing problem with inmate-on-inmate violence, 2) the inadequacy of MCMJ's classification system, and 3) their failure to train and supervise corrections officers regarding inmate classification.

33. Despite being on notice that MCMJ lacked "a meaningful classification system" and suffered from an ongoing inmate-on-inmate violence problem, Cochran and Oliver, acting with deliberate indifference, have failed and refused to implement an appropriate classification system.

34. In 2015, MCMJ's continued failures regarding inmate classification were highlighted by a report of the National Institute for Jail Operations (NIJO).

35. The NIJO even developed a classification system for MCMJ, which Cochran and Oliver refused to implement.

36. Cochran and Oliver have publicly conceded that they have not implemented the NIJO classification system, which would prevent dangerous inmates like Oslan from being housed with non-violent inmates like Christopher.

37. If this classification system had been implemented, Christopher would

---

[1] The county did eventually begin taking some steps to address issues with the jail facilities, and, in January 2023, a docketing area to process new inmates was completed.

not have been assaulted by Oslan.

38. Due in whole or in part to disagreements with DOJ regarding inmate classification and housing, Cochran and Oliver and the county ceased communicating with the DOJ.

39. As recently as June 2018, the DOJ communicated to Cochran and Oliver their continued concerns regarding inmate-on-inmate violence at MCMJ and the lack of a proper inmate classification and housing assignment system at MCMJ.

40. Cochran and Oliver have blamed inadequate facilities and funding for not implementing a proper classification system.

41. Because of the limitations of the facilities, MCMJ personnel are limited in their ability to protect non-violent inmates from dangerous inmates.

42. While inadequate facilities and funding certainly made implementing a proper classification harder, these factors did not make implementing such a system impossible.

43. Cochran and Oliver just decided it was too much trouble to implement a classification system that would protect inmates like Christopher.

44. As of July 2021, due to Cochran's and Oliver's deliberate indifference (and the county's years of delay in funding facility updates and maintenance), inmates were still being routinely housed without regard to their level of dangerousness.

45. Murderers and rapists and other dangerous inmates were routinely being housed with non-violent and minor offenders.

46. The failure to implement a proper classification system and take other measures to control inmate-on-inmate violence are policies and customs of Cochran and Oliver and directly led to the assault on Christopher by Oslan.

47. Acting with deliberate indifference, Cochran and Oliver failed and refused to implement a proper classification system and take other steps to reduce inmate-on-inmate violence.

48. Over the years leading up to Christopher's brutal beating, serious incidents of inmate-on-inmate violence occurred on a near-daily basis.

49. Long before the assault, Cochran, Oliver, and others were aware that assaults were a serious problem.

50. Cochran and Oliver, acting with deliberate indifference, routinely housed dangerous inmates in crowded conditions with non-violent inmates like Christopher.

51. Cochran and Oliver, acting with deliberate indifference, established an unreasonable and longstanding policy of not identifying and segregating inmates known or likely to be perpetrators of assaults.

52. MCMJ was both dangerously overcrowded and dangerously understaffed at the time Christopher was attacked, putting inmates such as Christopher at

substantial risk of harm.

53. Nevertheless, Cochran and Oliver failed to promulgate, implement, and enforce adequate policies, procedures, and practices necessary to adequately supervise and monitor the housing units to maintain the safety of inmates therein.

### Count I - 42 U.S.C. § 1983 - Failure to Protect (All Defendants)

54. Forwood had a Fourteenth Amendment right not to be subject to a known and unreasonable risk of serious harm while in MCMJ.

55. As explained above, defendants, acting individually and in conspiracy with other defendants, failed to protect plaintiff.

56. Defendants knew of and consciously disregarded the substantial risk that plaintiff would be injured while incarcerated, failing to protect him from harm.

57. The misconduct described in this count was undertaken with deliberate indifference to the rights of Forwood and others and was objectively unreasonable.

58. As a result, Christopher was housed with a murderer and brutally assaulted.

59. Defendants' misconduct directly and proximately caused Forwood to be subjected to an unreasonable risk of serious harm and caused him to suffer damages, including physical injury and disability, pain, suffering, fear, anxiety, rage, and other harmful physical and psychological harms, both from the brutal assault and its

devastating aftermath.

### Count I - 42 U.S.C. § 1983 - Failure to Protect (Cochran and Oliver)

60. As explained above, Cochran and Oliver, as a matter of policy and practice and with deliberate indifference, failed to properly train, assign, and supervise correctional officers regarding classification of inmates.

61. As a result, Christopher was housed with a murderer and brutally assaulted.

62. Defendants' misconduct directly and proximately caused Forwood to be subjected to an unreasonable risk of serious harm and caused him to suffer damages, including physical injury and disability, pain, suffering, fear, anxiety, rage, and other harmful physical and psychological harms, both from the brutal assault and its devastating aftermath.

### Relief Sought

63. As relief, plaintiff seeks the following:

a. That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

b. That plaintiff be awarded against the individual defendants only such punitive damages as a jury shall determine from the evidence plaintiff is entitled to recover;

c. That plaintiff be awarded prejudgment and post-judgment interest at the highest rates allowed by law;

d. That plaintiff be awarded the costs of this action, reasonable attorney's fees, and reasonable expert witness fees;

e. That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

**Dated: July 25, 2023.**

Respectfully submitted,

s/ Henry F. Sherrod III
Henry F. (Hank) Sherrod III
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone: (256) 764-4141
Facsimile: (877) 864-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

**Jury Demand**

Plaintiff demands a trial by jury.

s/ Henry F. Sherrod III